# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs November 27, 2012

## STATE OF TENNESSEE v. KEVIN C. POTTER

**Direct Appeal from the Criminal Court for Campbell County**
**Nos. 13928, 14179, 14070, 14076, 14888 & 14975    E. Shayne Sexton, Judge**

---

**No. E2012-00794-CCA-R3-CD - Filed February 21, 2013**

---

The Criminal Court for Campbell County sentenced the Defendant, Kevin C. Potter, to fifteen years of probation for multiple offenses that occurred between 2009 and 2011. In late 2011, the Defendant's probation officer filed an affidavit seeking a probation violation warrant for the Defendant's arrest. After a hearing, the trial court revoked the Defendant's probation and ordered that he serve his sentence in confinement. On appeal, the Defendant contends he was denied a fair hearing on the probation violation warrant and that the trial court erred because it failed to make specific findings of fact. The State agrees, and it asks us to reverse the case and remand it to the trial court for an order containing specific factual findings based upon the proof adduced at the revocation hearing. After a thorough review of the record and applicable authorities, we agree with the parties. We, therefore, reverse the judgment of the trial court and remand for entry of an order that sets forth specific factual findings for the revocation of probation.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Reversed and Remanded**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Tina L. Sloan (on appeal) and William C. Jones (at hearing), LaFollette, Tennessee, for the appellant, Kevin C. Potter.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Lori Phillips-Jones, District Attorney General; and Michael Ripley and Leif Jeffers, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION
## I. Facts
## A. Background

This case arises out of multiple guilty pleas entered by the Defendant. On October 26, 2009, the Defendant pled guilty to one count of possession of a Schedule II drug, theft of property valued over $500.00, possession of marijuana, promotion of the manufacture of methamphetamine, evading arrest, aggravated burglary, resisting arrest, possession of a Schedule II drug with the intent to sell, and assault. The trial court sentenced the Defendant to fifteen years, ordering that he serve his sentence on probation.

On May 23, 2011, the Defendant pled guilty to possession of drug paraphernalia and vandalism under $500.00. These convictions were the basis for the Defendant's first probation violation warrant. It appears from the record that he pled guilty to violating the conditions of his probation sentence.[1] The trial court ordered that the Defendant's probation be reinstated.

On July 21, 2011, a probation violation warrant was issued based upon a July 18, 2011, domestic violence charge, which was later dismissed. On August 15, 2011, the trial court again found the Defendant guilty of violating the conditions of his probation sentence. The trial court again reinstated the Defendant's probation. The trial court ordered, however, that the Defendant could not be released from custody until after he showed proof of employment to his probation officer and the Board of Probation and Parole approved a plan for the Defendant's payment of fines and fees.

On November 19, 2011, a violation of probation warrant was issued based upon a November 8, 2011, manufacturing methamphetamine charge, which was later dismissed. On February 27, 2012, the trial court found the Defendant guilty of violating his probation. The trial court ordered the Defendant to serve the remainder of his sentence in the custody of the Tennessee Department of Correction.

## B. Probation Revocation Hearing

At the hearing to determine whether the Defendant had violated his probation, the only witness was the Defendant's probation officer, Kelly Andrews. She testified that the Defendant was arrested on November 8, 2011, for manufacturing methamphetamine. On

---

[1]The judgments of conviction for these convictions are not included in the record. We have pieced some of these facts together from information contained in the Defendant's brief, which does not offer a citation to the record in support of these facts.

November 19, 2011, Andrews filed an affidavit in support of a probation violation warrant. In her affidavit, she alleged that the Defendant had violated several of the terms of his probation, including a requirement that he follow the law. Andrews agreed that the manufacturing methamphetamine charge against the Defendant had been dismissed on December 13, 2011.

Andrews testified that her affidavit also alleged that the Defendant had violated his probation by failing to maintain lawful employment. Specifically, he had failed to provide her with proof of employment or proof that he was seeking employment.

Andrews said that the Defendant had violated his probation by failing to carry out her "lawful instructions." She expounded that she instructed the Defendant to report on October 4 and that he did not report at any time in October. Andrews testified the Defendant also failed to attend a scheduled class called "Thinking For a Change," which was held on October 5. The Defendant had not reported to her since September.

Andrews testified that the Defendant also violated his probation by failing to pay his supervision fees, which were $45.00 per month. At the time of the hearing, he owed the Board of Probation and Parole at least $225.00. He had similarly failed to pay the required court costs of $25.00 per week, for a total of $125.00.

Andrews recounted the Defendant's history of supervision, saying that he began parole in Illinois. After finishing the required time there, he returned to Tennessee to serve his probation. She said that his probation has been "sporadic" and that he had violated his probation multiple times. Most of the violations were based upon new charges. Andrews opined that the Defendant was not willing to abide by the terms of his probation.

On cross-examination, Andrews testified that she had supervised the Defendant beginning in 2009 and that, at first, she saw him twice per month. She reduced the visits to once per month shortly before the Defendant was charged with multiple offenses, which were the basis for his first probation violation. Andrews recalled that the Defendant's second probation violation was based on new charges of domestic violence and vandalism. When the victim failed to appear in that case, the case was dismissed. At the hearing on this second probation violation, the trial court found that, even though the new charges were dismissed, the Defendant was still in technical violation of his probation because he had failed to pay his supervision fees. The trial court ordered him to provide proof of employment, and the Defendant provided Andrews with documentation that he had employment arranged at a marina upon his release.

Based upon this evidence, the trial court found:

This is a third, correct – a third violation.  The Court's concern about this was the length of the – I'm showing a 15-year probation.

. . . .

. . . . You know, . . . I don't relish the idea of imprisoning someone for that length of time without a great deal of thought, but I'm gonna find he's in technical violation.  I didn't know at the time that he had been paroled out of Illinois.  That has – that's very looming in the prospects for probation.  This is not working, gentlemen.  I'm all for giving opportunities . . . to get things right, and the fact that we had a dismissal on a charge doesn't necessarily clean up everything.

. . . .

Well, I guess what Ms. Andrews said.  You know, I mean, [the dismissed charge is] certainly not a conviction, but . . . I don't know that I'd call it an acquittal.  I'm gonna give him credit for the time that he's served on these charges on pretrial, any violation time, and I'm gonna call it a day on probation for any time of alternative sentencing.  The [D]efendant hasn't worked out too well.  So, remand to the Tennessee Department of Corrections.

The trial court entered orders reflecting the revocation, but it did not issue any written findings of fact.  It is from those orders that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends that the trial court erred when it revoked his probation because, among other things, it failed to make findings of fact.  The State agrees, and asks this Court to reverse and remand the case to the trial court for it to make specific factual findings.

A trial court may revoke probation upon its finding by a preponderance of the evidence that a violation of the conditions of probation has occurred.  T.C.A. § 40-35-311(e) (2010).  "In probation revocation hearings, the credibility of witnesses is to be determined by the trial judge." *State v. Mitchell*, 810 S.W.2d 733, 735 (Tenn. Crim. App. 1991).  If a trial court revokes a defendant's probation, its options include ordering confinement, ordering the sentence into execution as originally entered, returning the defendant to probation on modified conditions as appropriate, or extending the defendant's period of probation by up to two years.  T.C.A. § § 40-35-308(a), (c), -310 (2010); *see State v. Hunter*,

1 S.W.3d 643, 648 (Tenn. 1999).  The judgment of the trial court in a revocation proceeding will not be disturbed on appeal unless there has been an abuse of discretion.  *See State v. Smith*, 909 S.W.2d 471, 473 (Tenn. Crim. App. 1995).  In order for this court to find an abuse of discretion, "there must be no substantial evidence to support the conclusion of the trial court that a violation of the conditions of probation has occurred."  *State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001).  After finding a violation, the trial court is vested with the statutory authority to "revoke the probation and suspension of sentence and cause the defendant to commence the execution of the judgment as originally entered . . . ." T.C.A. § 40-35-311(e)(1) (2010); *accord Hunter*, 1 S.W.3d at 646 (holding that the trial court retains the discretionary authority to order the defendant to serve his or her original sentence in confinement).  Furthermore, when probation is revoked, the trial court may order "the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension . . . ."  T.C.A. § 40-35-310(a) (2010).

A defendant at a probation revocation proceeding is not entitled to the full array of procedural protections associated with a criminal trial.  *See Black v. Romano*, 471 U.S. 606, 613 (1985); *Gagnon v. Scarpelli*, 411 U.S. 778, 786-790 (1973).  In *Practy v. State*, however, this Court enunciated the constitutionally-mandated procedural due process standards applicable to a probation revocation proceeding. 525 S.W.2d 677, 679-80 (Tenn. Crim. App. 1974) (citing *Gagnon v. Scarpelli*, 411 U.S. 778 (1973) and *Morrissey v. Brewer*, 408 U.S. 471 (1972)).  The *Practy* Court enumerated the "'minimum requirements of due process'" as first set forth by the United States Supreme Court in *Morrissey*:

> "(a) written notice of the claimed violations of [probation or] parole; (b) disclosure to the [probationer or] parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a "neutral and detached" hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the fact finders as to the evidence relied upon and reasons for revoking [probation or] parole."

*Id.* at 680 (quoting *Morrissey*, 408 U.S. at 489); *see also State v. Leiderman*, 86 S.W.3d 584, 590 (Tenn. Crim. App. 2002).

This Court has held in multiple cases that the lack of both written and oral findings of fact supporting the trial court's revocation of a defendant's probation necessitated the conclusion that a defendant had been denied due process of law.  *State v. Colby Terrell Black*, No. M2012-00833-CCA-R3-CD, 2012 WL 5594619, at *3 (Tenn. Crim. App., at

Nashville, Nov. 13, 2012), *no Tenn. R. App. P. 11 application filed*; *State v. Michael Byrd*, No. M1999-00456-CCA-R3-CD, 2000 WL 1277361, at *3 (Tenn. Crim. App., at Nashville, Aug. 31, 2000), *no Tenn. R. App. P. 11 application filed*; *State v. Travis Dewayne Weaver*, No. 03C01-9607-CR-00269, 1998 WL 19935, at *3 (Tenn. Crim. App., Knoxville, Jan. 22, 1998), *no. Tenn. R. App. P. 11 application filed*; *State v. Billy Carter*, C.C.A. No. 03C01-9506-CR-00159, 1996 WL 175969, at *3 (Tenn. Crim. App., Knoxville, April 16, 1996) (holding that, "Although we conclude that there was sufficient evidence from which the trial court might have found that the appellant violated the conditions of his probation, the trial court's failure to make findings of fact" necessitated remand for entry of appropriate findings), *no Tenn. R. App. P. 11 application filed. Cf. State v. Delp*, 614 S.W.2d 395, 397 (Tenn. Crim. App. 1980) (finding no denial of due process where the trial court substantially complied with the final *Gagnon* requirement by making oral findings of fact). In the aforementioned cases, we vacated the lower court's revocation of probation and remanded the case for entry of appropriate findings.

At the revocation hearing, the trial court discussed the Defendant's criminal history, but it did not address the allegations made in the third revocation warrant, which were technical in nature. The trial court also did not set forth the evidence it relied upon in revoking the Defendant's probation as required by the due process standards. We, therefore, reverse the judgment of the trial court and remand for entry of a written order containing specific factual findings upon which the trial court relied when it ordered the Defendant's probation revoked.

### III. Conclusion

Based upon the foregoing authorities and reasoning, we reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

_____
ROBERT W. WEDEMEYER, JUDGE